IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JOSHUA ERIC HAWK CLARK                                                     PLAINTIFF

v.                                                            No. 3:22-cv-076-MPM-RP

COMMISSIONER OF THE MISSISSIPPI                      DEFENDANTS
DEPARTMENT OF CORRECTIONS
and ATTORNEY GERNERAL OF THE
STATE OF MISSISSIPPI

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff Joshua Clark's Petition for Writ of Habeas Corpus. [1]. The Court, having reviewed the record and having carefully considered the applicable law, is now prepared to rule.

FACTS

This case centers around the admission of expert testimony regarding head trauma in a child murder case. On January 5, 2008, Mr. Clark was at his home with his wife, friends, and children in Itawamba County. Around 3:00 p.m., his wife and friends drove into town, leaving Mr. Clark in charge of four children—his four-month-old daughter (Kyllie), Kyllie's twin brother (Quinton), and two older siblings. When his wife and friends returned at around 5:30 p.m., they found Kyllie glassy-eyed and gasping for breath in the same room as an unconcerned Mr. Clark. His wife and friends immediately recognized Kyllie was seriously injured and called 911 before attempting CPR. Kyllie was taken to a local hospital and then transferred to Le Bonheur Children's Hospital in Memphis where shortly she died.

1

The hospital diagnosed Kyllie with rib fractures, retinal and subdural hemorrhages, and brain swelling. Dr. Lakin, who would later serve as the State's primary expert witness, concluded that Kyllie's death had been caused by Abusive Head Trauma ("AHT").[1]

Mr. Clark was charged with capital murder. After initially pleading guilty and being sentenced to life in prison, Mr. Clark successfully moved to have his guilty plea rescinded and received a second chance at trial.

A strong source of pretrial contention was the admissibility of Dr. Lakin's expert testimony regarding the timing of the alleged injury and the validity of an AHT diagnosis. The trial judge held an extensive *Daubert* hearing dealing with these issues and ultimately allowed Dr. Lakin's testimony.

At trial, Mr. Clark took the stand. His version of events did not align with the version proffered by his wife and friends. While he maintained that he did not cause Kyllie's injuries, he had no explanation for his failure to call emergency services or seek medical care for his daughter. At the conclusion of trial, Mr. Clark was found guilty of second-degree murder and sentenced to forty years in prison. [2,3]

Mr. Clark appealed his conviction on six claims of error. At the first stage of appeal, the Mississippi Court of Appeals reversed his conviction holding that "the [trial] court abused its discretion by admitting into evidence Dr. Lakin's expert testimony" and found Dr. Lakin's

---

[1] Abusive head trauma ("AHT") and Shaken Baby Syndrome ("SBS") have been used interchangeably throughout these proceedings to mean "trauma inflicted on the head of a child." This Court will use "AHT" to refer to this trauma.
[2] Mr. Clark was also charged with abuse of Kyllie's twin, Quinton, who Dr. Lakin determined had also suffered broken ribs and abusive head trauma. That case was severed.
[3] Mr. Clark was previously under suspicion for abusing the nine-month-old child of his former girlfriend. That child, after being left alone with Mr. Clark, was found to have two broken arms and a broken leg. The trial court allowed this evidence, though it was ultimately not presented at trial.

testimony "fell well short of *Daubert*'s expectations" for reliability. *Clark v. State*, 363 So.3d 880, 894 (Miss. Ct. App. 2019) (citing *Daubert v. Merrell Dow Pharma. Inc.*, 509 U.S. 579 (1993)). The Mississippi Supreme Court then reversed the Court of Appeals and reinstated Mr. Clark's conviction holding that Dr. Lakin's expert testimony satisfied *Daubert*'s reliability requirement. *Clark v. State*, 315 So. 3d 987 (Miss. 2021). Finally, after exhausting all other postconviction remedies, Mr. Clark filed a Petition for Writ of Habeas Corpus with this Court.

ANALYSIS

The Writ of Habeas Corpus, found in the Suspension Clause of the U.S. Constitution, is a postconviction procedure which enables prisoners to challenge the legality of their confinement. *Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 116 (2020) (citing U.S. Const., Art. I, § 9, cl. 2.). The remedy "is an extraordinary one." *Goto v. Lane*, 265 U.S. 393, 401 (1924). "The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). For claims adjudicated on the merits in state court, § 2254(d) prohibits federal habeas relief unless the state court's ruling:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Id.* at 98. Thus, strict limits exist on the permissible scope of habeas review.

3

In Mr. Clark's habeas petition, he raises three arguments: (1) The Mississippi Supreme Court violated the Equal Protection Clause by misapplying Mississippi Rule of Evidence 702; (2) failing to require the trial court to conduct a reliability analysis before admitting expert testimony violated the Due Process Clause; and (3) the evidence was insufficient to establish guilt beyond a reasonable doubt.

*I. Equal Protection*

Mr. Clark first argues that the Mississippi Supreme Court's "refusal to apply the standards of Miss. R. Evid. 702 in this criminal case, when these standards are applied in civil cases, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." This argument—while creative—is constructed upon two unfounded presumptions: (1) that the trial court misapplied Mississippi Rule of Evidence 702 and (2) that the Mississippi Supreme Court erred in affirming the trial court. Assuming these to be true (for now), Mr. Clark's argument is still a bit unclear. It deploys three separate equal protection theories interchangeably. At some points, Mr. Clark argues that treating criminal defendants differently than civil defendants is an equal protection violation. At other points, Mr. Clark uses a class-of-one equal protection theory to argue that he was intentionally treated differently than every other similarly situated person. And yet at other points, Mr. Clark argues that because his liberty interest is a fundamental right that was unjustly taken from him, this Court must analyze the Mississippi Supreme Court's decision under strict scrutiny.

In response, the State argues that Mr. Clark's equal protection argument is waived under Miss. Code Ann. § 99-39-21 since he failed to raise it at trial or on appeal. Mr. Clark retorts that it was impossible for him to raise his equal protection argument at trial or on appeal since the conduct he takes issue with—the Mississippi Supreme Court's decision—did not exist at those times. This

4

Court agrees that Mr. Clark's equal protection argument is not waived since it was not capable of being raised previously. *See* Miss. Code Ann. § 99-39-21(1) (requiring claims to be "capable of determination at trial and/or on direct appeal" for waiver to apply).

What is more concerning lies at the heart of Mr. Clark's claim. Mr. Clark is essentially asking this Court to reverse a state court's determination of state evidence law. Doing so, however, would eviscerate the bedrock principles of federalism, state sovereignty, and common law that our country's judicial system is founded upon. In the landmark case *Erie R. Co. v. Tompkins*, the Supreme Court stated:

> [T]he constitution of the United States [] recognizes and preserves the autonomy and independence of the states,—independence in their legislative and independence in their judicial departments. Supervision over either the legislative or the judicial action of the states is in no case permissible except as to matters by the constitution specifically authorized or delegated to the United States. Any interference with either, except as thus permitted, is an invasion of the authority of the state, and, to that extent, a denial of its independence.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938) (quoting *Baltimore & O.R. Co. v. Baugh*, 149 U.S. 368, 401 (1893)). Thus, this Court is hesitant to even consider the equal protection argument since to do so would first require finding erroneous the State of Mississippi's determination of Mississippi law, thereby impinging on its sovereignty.

The Supreme Court analyzed a similar situation in *Beck v. Washington*, 369 U.S. 541 (1962). In *Beck*, a man argued that his state court conviction violated his due process and equal protection rights. *Id*. at 542. The Supreme Court, in upholding the man's conviction, stated:

> The final argument under the Equal Protection Clause is that Washington has singled out petitioner for special treatment by denying him the procedural safeguards the law affords others… But this reasoning proceeds on the wholly unsupported assumption that such procedures have been required in Washington in all other cases. Moreover, it is contrary to the underlying finding of the Superior Court… And even if we were to assume that Washington law requires such procedural safeguards, the petitioner's argument here comes down to a contention

5

> that Washington law was misapplied. Such misapplication cannot be shown to be an invidious discrimination. **We have said time and again that the Fourteenth Amendment does not 'assure uniformity of judicial decisions * * * (or) immunity from judicial error * * *.'** *Milwaukee Electric Ry. & Light Co. v. Wisconsin ex rel. Milwaukee*, 252 U.S. 100, 106, 40 S.Ct. 306, 309, 64 L.Ed. 476 (1920). Were it otherwise, every alleged misapplication of state law would constitute a federal constitutional question.

*Id*. at 554-55 (emphasis added); *and see Little v. Crawford,* 449 F.3d 1075, 1082 (9th Cir. 2006) ("[This] claim…amounts to an allegation that…Nevada law was misapplied or that the Nevada Supreme Court departed from its earlier decisions. Under clearly established Supreme Court law, such contention neither gives rise to an equal protection claim, nor provides a basis for habeas relief." (citing *Beck v. Washington*, 369 U.S. 541, 554–55 (1962) and *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991))).

Another controlling Supreme Court case is *Estelle v. McGuire*, 502 U.S. 62 (1991). In *Estelle*, a man convicted of killing his six–month–old daughter filed a habeas petition arguing that a state court's admission of expert testimony regarding battered child syndrome was a violation of his due process rights. *Id*. at 64. Although the Ninth Circuit agreed with him, the Supreme Court reversed, holding that the Ninth Circuit "exceeded the limited scope of federal habeas review of state convictions." *Id*. The Supreme Court continued:

> "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."

*Id*. at 67 (citations omitted) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *and see Jones v. Hendrix*, 599 U.S. 465, 490 (2023) ("a state prisoner could never bring a pure statutory-error claim in federal habeas, because 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Estelle*, 502 U.S. at 67.)); *see also Cummings v. Simons*, 506 F.3d 1211, 1237 (10th Cir. 2007) ("[The defendant] has cited to no []

6

Supreme Court decisions, and our own independent research has failed to produce any holding that a state court's erroneous application of state criminal law can result in a violation of a criminal defendant's equal protection rights.").

A state-court determination of state law is exactly what is at issue here. Although framed as a constitutional question, Mr. Clark's equal protection claim is primarily a contention that the Mississippi Supreme Court erred when ruling on Mr. Clark's case—the constitutional element is just window dressing. It is hard to imagine a workable judicial system where each time a state supreme court issues a decision, the losing party has a viable equal protection claim. For the common law system to function, courts must have breathing room to create and modify precedent. Case law develops slowly, organically over time as high courts render decisions to fit the legal and factual issues presented. This is not a case where the Mississippi Supreme Court refused to apply the rules of evidence to Mr. Clark because it did not like him or his race or his religion. It is a case where the court reviewed the record, reviewed the law, and reached what it felt was the proper decision—a decision that was certainly correct. For these reasons, Mr. Clark's equal protection claim fails.

*II. Due Process*

Mr. Clark next argues that his due process rights were violated. He contends "failing to require the trial court to conduct a reliability analysis before admitting expert opinion against a criminal defendant violates *Mathews v. Eldridge*, 424 U.S. 319 (1976)." This argument is similar in form to his last one in that it erroneously presupposes a failure by the trial court. The record does not support Mr. Clark's contention that the trial court failed to conduct a reliability analysis. It instead shows that the trial court held an extensive *Daubert* hearing during which defense

7

counsel engaged in a prolonged presentation of their concerns about the reliability of Dr. Lakin's testimony. Indeed, when addressing this same issue, the Mississippi Supreme Court stated:

> [M]agic words are not required under the *Daubert* standard or elsewhere… The fact that the judge lumped the *Daubert* finding under the phrase "qualified to testify" is of no importance here because it is clear that the judge considered not only Dr. Lakin's qualifications but also the relevance and reliability of her expert testimony concerning SBS/AHT. The record clearly shows that the trial judge had the issues regarding the actual SBS/AHT testimony squarely before it when it determined Dr. Lakin to be "qualified to testify."

*Clark v. State*, 315 So. 3d 987, 996-97 (Miss. 2021). Thus, Mr. Clark's entire due process argument rails against something that never occurred.

Ignoring this fatal flaw, Mr. Clark's due process argument is still unclear. The language "failing to require the trial court," suggests that Mr. Clark is arguing—much like in his last argument—that the Mississippi Supreme Court was the entity which violated his due process rights. The body of the argument, however, contends that it was the trial court which violated his due process rights.

Regardless of whose conduct Mr. Clark argues as violative, the procedural due process requirements of *Mathews v. Eldridge* were satisfied. 424 U.S. 319 (1976). In *Mathews*, the Supreme Court stated that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Here, even if the trial judge had not made a reliability determination, it is undisputed that Mr. Clark received a meaningful opportunity to be heard at every stage of trial and appeal. During these chances to be heard, Mr. Clark raised his concerns about the reliability of Dr. Lakin's testimony. Mr. Clark received more than the minimum required procedural safeguards, and his due process claim therefore fails.

8

*III. Sufficiency of Evidence*

Finally, Mr. Clark argues "[Dr.] Lakin's testimony was insufficient to establish guilt beyond a reasonable doubt as required by the Due Process Clause of the Fourteenth Amendment." This argument fails because, even if true, it overlooks that there were other sources of evidence beyond Dr. Lakin's testimony which were independently sufficient to establish guilt beyond a reasonable doubt. In *Jackson v. Virginia*, the Supreme Court held that "in a challenge to a state criminal conviction…the applicant is entitled to habeas corpus relief if it is found that… no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). A rational trier of fact could have found proof beyond a reasonable doubt here.

Dr. Lakin's testimony, when viewed in conjunction with the testimony of the other witnesses, was sufficient to prove Mr. Clark guilty. Dr. Lakin stated that Mr. Clark told her that Kyllie ate around 5:00 p.m. She testified that Kyllie's injuries were so severe that the child would have lost consciousness very quickly and would have been unable to eat or cry. According to Dr. Lakin, the injuries to Kyllie's head were too severe to be the result of simple drop or fall or trivial household trauma; they required much greater force. She also ruled out the possibility of hypoxia, CPR, birth complications, or sudden infant death syndrome as possible causes of death.

Mr. Clark makes much ado about Dr. Lakin's "admi[ssion] that she could not determine the time of the alleged injury." Mr. Clark argues that because Dr. Lakin could not determine when the injury occurred, "there remains a lack of proof beyond a reasonable doubt that the alleged injury occurred [when] Clark had exclusive custody." This argument is flawed. It erroneously conflates Dr. Lakin's concession that she could not pinpoint the *exact* time of the injury with the conclusion that Dr. Lakin could not reliably determine that the injury occurred while the infant was in Mr. Clark's exclusive care. Dr. Lakin consistently testified that the severity of Kyllie's head

9

trauma would cause the immediate onset of significant symptoms. These significant symptoms were not present when Mr. Clark's wife and friends left. These symptoms were immediately recognized as present when they returned three hours later. A rational trier of fact could have concluded that Kyllie's injuries occurred between these two periods of time when she was in Mr. Clark's exclusive custody.

But even without Dr. Lakin's testimony, a rational trier of fact could have found Mr. Clark guilty beyond a reasonable doubt. All witnesses—Mr. Clark, his wife, both friends—agreed that Kyllie was fine when the wife and friends left the house. Mr. Clark had sole control of Kyllie, a four-month-old who was just beginning to support her own head, until they returned. The wife and friends all stated that, upon their return, they immediately recognized Kyllie was seriously injured.

According to the wife: the first friend who went through the door was so taken aback by Kyllie's condition that she dropped the bags she was carrying and asked what had happened; Mr. Clark, who was playing video games, appeared unconcerned; the wife and Mr. Clark then argued about whether to take Kyllie to the hospital, Mr. Clark insisting that Kyllie was fine; the wife had to push Mr. Clark off so she could perform CPR. Both friends told a similar story: all of them were shocked as they walked through the door, and one of the friends called 911 while the wife performed CPR.

When Mr. Clark took the stand, his story did not match the testimony of the others. Mr. Clark claimed, contrary to the testimony of his wife and friends, that he was not playing video games when they returned. He also denied that his wife ever attempted CPR or that, as one of the friends testified, he said his daughter "cried like a f-ing titty baby" when asked about his daughter's behavior that day. Although he maintained that he did not hurt Kyllie and claimed that Kyllie began making gasping sounds only five to ten minutes before his wife and friends returned, he had no

10

explanation for why he did not call emergency services or take Kyllie to the hospital. He also failed to explain how his wife and friends could look at Kyllie and immediately recognize an injury severe enough to result in imminent death, while Mr. Clark could look at Kyllie at the same time and argue that she was fine.

Even the defense expert conceded that Kyllie's death was caused by blunt force trauma to her head.

The jury saw firsthand the testimony and body language of the witnesses. The jury saw firsthand the demeanor of Mr. Clark as he testified. The jury then decided unanimously to find Mr. Clark guilty beyond a reasonable doubt. It is "the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). On appeal, the Mississippi Supreme Court addressed Mr. Clark's sufficiency-of-the-evidence argument and found that "a rational trier of fact could have found the essential elements of depraved-heart murder beyond a reasonable doubt." *Clark v. State*, 315 So.3d 987, 1001 (Miss. 2021). "Where a state appellate court has conducted a thorough review of the evidence … its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). This Court agrees that the evidence was sufficient for a rational trier of fact to find Mr. Clark guilty beyond a reasonable doubt. Therefore, this claim fails.

11

CONCLUSION

**ACCORDINGLY**, Plaintiff Joshua Clark's Petition for Writ of Habeas Corpus [1] is **DENIED**. The State's Motion to Strike [40] is **DISMISSED** as moot. This case is **CLOSED**.

**SO ORDERED** this the 27th day of February, 2025.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI